**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Martin Houston,<br><br>    Plaintiff,<br><br>vs.<br><br>Arizona State Board of Education, a political sub-division of the State of Arizona, et al.,<br><br>    Defendants. | No. CV-10-8160-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendants' Motion to Dismiss. (Doc. 36). For the reasons discussed below, the motion is granted.

**BACKGROUND**

Plaintiff Dr. James M. Houston is a resident of Oregon, where he is a certified teacher. (Doc. 32 at ¶49). Plaintiff obtained his doctoral degree at Northern Arizona University ("NAU") between 1992 and 1995. (*Id.* at ¶22). In December 1995, Plaintiff told the Arizona Board of Regents that he would return his diploma and awards in exchange for his tuition money. (*Id.* at 31). Early in 1996, he sued NAU for consumer fraud, and he attracted substantial media attention as he picketed outside NAU commencement ceremonies between 1996 and 1998. (*Id.* at ¶¶33, 36). In 2004 Plaintiff obtained his teaching license in Oregon, and he applied for teaching reciprocity in Arizona in 2006. (*Id.* at ¶¶47–49). In connection with this application, Plaintiff was obliged to submit his criminal history, which in his case

includes misdemeanor alcohol-related convictions, to the Professional Practices Advisory Committee ("PPAC"). (*Id.* at ¶¶49–50). The PPAC conducts teaching applicants' character and fitness checks for the State of Arizona. (Doc. 32 at ¶52). The PPAC voted 4-1 to recommend that Plaintiff receive his reciprocity license in Arizona. (*Id.* at ¶54). Plaintiff was assured by an employee of Defendant Arizona State Board of Education ("SBE") that the SBE almost always votes in favor of the PPAC's recommendations. (*Id.* at ¶59).

Plaintiff had his first hearing before the SBE on March 26, 2007. (Doc. 32 at ¶¶60–61). Upon arrival at his SBE hearing, Plaintiff allegedly found errors within the PPAC hearing transcript submitted to the SBE and within the hearing agenda documents that were not corrected in time for the hearing. (*Id.*). There were eleven SBE members present at the hearing, including Defendant John Haeger, President of NAU, and Defendant Tom Horne. (*Id.* at ¶63–66). At the hearing, several board members cited Plaintiff's alcohol problems as reasons for rejecting PPAC's recommendation. (*Id.* at ¶65). When it came time to vote on PPAC's recommendation for Plaintiff's certification, Defendant Haeger whispered into Defendant Horne's ear and exited the room. (*Id.* at ¶63). Plaintiff was given an opportunity to give a presentation supporting his application for certification, but he opted not to speak. (*Id.* at ¶64). After the remaining board members took a vote of 6-4 rejecting the PPAC's recommendation and before the final vote on whether to grant certification, Plaintiff attempted to withdraw his application.[1] (Doc. 32 at ¶¶66–67). On Plaintiff's request, the certification vote was continued until April 2007 so that he could consult with an attorney. (*Id.* at ¶67). That vote was later continued until May 19, 2008. (*Id.* at ¶75).

After consulting with an attorney, Plaintiff served notice of claims on Defendants in April 2007. (Doc. 32 at ¶¶73–74). In March 2008, Plaintiff filed a lawsuit in the District

---

[1]Plaintiff was worried that he would be denied his reciprocity certification, in which case the rejection would be entered into a national database maintained by the National Association of State Directors of Teacher Education and Certification. Withdrawing the application prior to the rejection decision would enable Plaintiff to keep a clean record for purposes of future employment. (Doc. 32 at ¶57).

Court of Oregon which was subsequently dismissed for lack of jurisdiction. (*Id.* at ¶75; Doc. 20, Ex. 1[2]). At some point prior to his certification vote, Plaintiff contacted Defendant Vince Yanez, Director of the SBE, to "remind[] Defendant Yanez . . . that an inherent conflict-of-interest, bias, prejudice, and partiality existed in this matter due to the notice of claim . . . and the then active lawsuit filed by the plaintiff" against the board members. (*Id.* at ¶76). Defendant Yanez allegedly responded with threats to withdraw the reciprocity application. (*Id.* at ¶76).

The certification vote took place on May 19, 2008. Plaintiff made a speech in support of his application and was allegedly repeatedly interrupted by various board members, including Defendant Horne, who commented about Plaintiff's allegedly stereotypical beliefs about members of the Navajo Nation. (Doc. 32 at ¶77). The SBE unanimously voted to both reject the PPAC recommendation and reject Plaintiff's application for certification. (*Id.* at ¶78). Plaintiff subsequently obtained reciprocity teaching certificates from California and Alaska; Plaintiff also renewed his Oregon certificate. (*Id.* at ¶92).

Plaintiff filed a petition for judicial review of SBE's decision before the Maricopa County Superior Court, which was dismissed. (Doc. 32 at ¶81). The Arizona Court of Appeals affirmed the dismissal. *Houston v. State Bd. of Educ.*, No. 1 CA-CV 10-0634, 2011 WL 5926675, at *5 (Ariz. Ct. App. 2011).

Plaintiff then sued Defendants in August 2008 in Maricopa County Superior Court for various state tort claims. (Doc. 32 at ¶82). Defendants' motion for summary judgment on the

---

[2]Exhibit 1 of Doc. 20 is Plaintiff's original complaint filed in the District Court of Oregon and the District Court of Oregon's order dismissing the case for lack of personal jurisdiction. This Court has taken judicial notice of the original complaint because it is a document "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (alteration in original). This Court also takes judicial notice of the District Court of Oregon's order as a "matter[] of public record outside the pleadings." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (overruled on other grounds by *Astoria Fed. Sav. & Loan Ass'n. v. Solimino*, 501 U.S. 104 (1991)).

tort claims was granted on June 8, 2011. (Doc. 46, Ex. 1).[3] After Plaintiff served subpoenas on Defendants for depositions in the action filed in Maricopa County, Defendant SBE brought disciplinary proceedings against Plaintiff in March 2010 and revoked Plaintiff's twenty-six-year-old, unused Arizona substitute teaching license based upon Plaintiff's DUI history. (*Id.* at ¶87; Doc. 44, Ex. 8).

Plaintiff filed the instant action on August 25, 2010.[4] Plaintiff's amended complaint contains thirteen counts alleging constitutional claims under 42 U.S.C. § 1983, racketeering violations under state and federal law, abuse of process, state law torts, whistle-blower violations under state and federal law, and violation of the Americans with Disabilities Act. (Doc. 36 at ¶¶101–210). Defendants now move to dismiss Plaintiff's claims pursuant to Federal Rules of Procedure 12(b)(1), (2), (6) and 12(c). (Doc. 36 at 2:1).

**DISCUSSION**

**I.     Counts 1–5: 42 U.S.C. § 1983**

Counts 1–5 are dismissed because they are barred by the statute of limitations.

**A.     Legal Standard**

The first five counts are all based on an alleged deprivation of constitutional rights in violation of 42 U.S.C. § 1983. (Doc. 36 at ¶¶103, 113– 19, 125–26, 134, 147). Section 1983 claims "are best characterized as personal injury actions." *Madden-Tyler v. Maricopa County*, 189 Ariz. 462, 471, 943 P.2d 822, 826 (App. 1997) (quoting *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)). Federal law determines when the statute of limitations for personal injury claims under §1983 begins, while state law determines the length of the statute of

---

[3] This Court has taken judicial notice of Maricopa County Superior Court's order for summary judgment as a matter of public record. A court may take judicial notice of "matters of public record outside the pleadings." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (*overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n. v. Solimino*, 501 U.S. 104 (1991)).

[4] On October 11, 2011 Plaintiff filed a claim in the District Court of Arizona, No. 11-CV-01974-SRB, with eleven apparently identical claims to those asserted here, and arising from the same factual scenario.

limitations. *Hoesterer v. City of Cathedral City*, 945 F.2d 317, 318 (9th Cir. 1991). Time accrues for a cause of action when a party "kn[ows] or reasonably should have known of [its] rights to bring the action." *Vaughan v. Grijalva*, 927 F.2d 476, 480 (9th Cir. 1991). Additionally, accrual begins with "the last overt act" and not from "the mere continuance of a conspiracy" that may result in continued injury. *Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986). Under Arizona law, there is a two year statute of limitations period for §1983 claims, derived from A.R.S. § 12-542(1). *Madden-Tyler*, 189 Ariz. at 466.

**B.    Analysis**

The acts that allegedly gave rise to Plaintiff's injuries occurred during the SBE hearings on March 26, 2007 and May 19, 2008. (Doc. 46 at 4:4–5).[5] Plaintiff knew or should have reasonably known that after May 19, 2008 he had a cause of action to bring against Defendants. He had two years or up until May 19, 2010, to do so. Plaintiff filed this suit on August 25, 2010, over three months after the expiration of the limitations period. (Doc. 44 at 8:5–6). His § 1983 constitutional claims must therefore be dismissed.

Plaintiff argues that the official denial of his certification was August 28, 2008, the date of the administrative review of the SBE's decision. (*Id.* at 8:1–4). Exhaustion of state administrative remedies, however, is not "required as a prerequisite to bringing an action pursuant to §1983." *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 502, 516 (1982). Because Plaintiff was not required to exhaust state administrative remedies prior to bringing the constitutional claims, the statute of limitations accrued with the "last overt act" that gave

---

[5]In Count one, Plaintiff alleges that "in the denial of his application for teacher certification," he was deprived of the privileges and immunities due to United States citizens, due process, equal protection, free speech, his right against illegal search and seizure, and he was subjected to cruel and unusual punishment. Count two alleges that the Defendant's promulgation or lack of promulgation of unconstitutional policies resulted in similar constitutional deprivations. Count three alleges that the same conduct constitutes violation of Plaintiff's substantive due process rights. Count four alleges that the same conduct constitutes an equal protection violation, and count five alleges that the same conduct constituted a civil rights conspiracy in violation of §1983. (Doc. 36 at ¶¶103, 113– 19, 125–26, 134, 147).

rise to these claims, and was not tolled while Plaintiff waited for the administrative review. *Gibson*, 181 F.2d at 1340. According to the facts alleged by Plaintiff, that last overt act occurred on May 19, 2008 the date of the second SBE hearing. Plaintiff does not allege the occurrence of facts between May 19, 2008 and August 28, 2008 that would give rise to constitutional claims. (Doc. 32 at ¶¶93–94). Furthermore, Plaintiff knew after his first SBE hearing and after speaking with an attorney that he had claims for injury. (*See id.* at ¶73–74). Plaintiff demonstrated this knowledge by suing Defendants in March 2008 in the District Court of Oregon for the same constitutional claims alleged here. (Doc. 20, Ex. 1 at 24–29, 33–35). Although the second SBE hearing, that occurred two months later, contains additional facts that gave rise to Plaintiff's Complaint in this Court, Plaintiff reasonably should have known of his rights on May 19, 2008, the date of that hearing. Counts 1–5 are therefore barred due to the two year statute of limitations.

## II. Counts 5–6, 12–13

Plaintiff fails to address Counts 5–6 and 12–13 in his response to Defendants' motion. Thus, under the local rules, the Court is entitled to treat Plaintiff's failure to respond as consent to Defendants' arguments and consent to the granting of the Defendants' Motion to Dismiss.[6] *See Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995) (holding that district court did not abuse its discretion in summarily granting defendants' motion to dismiss pursuant to local rule where pro se plaintiff had time to respond to motion but failed to do so). In its discretion, however, the Court will evaluate the merits of Defendants' challenge. The Court finds that Count 5 is already dismissed due to the statute of limitations, while Counts 6 and 12–13 are barred under Rule 12(b)(6).

---

[6] Local Rule of Civil Procedure 7.2(i) provides that when "the opposing party does not serve and file the required answering memoranda . . . such non-compliance may be deemed a consent to the . . . granting of the motion and the Court may dispose of the motion summarily."

**A. Legal Standard**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The task in a motion to dismiss "is to evaluate whether the claims alleged can be [plausibly] asserted as a matter of law." *See Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

**B. Analysis**

**1. Count 6: Racketeering**

Count 6 is a claim for racketeering violations under 18 U.S.C. § 1961 and A.R.S. § 13-2301. (Doc. 32 at ¶¶153–60). Plaintiff fails to allege facts which make it plausible that the Defendants have engaged in "racketeering activity."

The federal racketeering statute "provides a private civil action to recover treble damages for injury 'by reason of a violation of' its substantive provisions." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481 (1985). To bring a racketeering violation under federal law, Plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sanford v. Memberworks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010) (quoting *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007)). Racketeering activity under federal law is defined as:

> [A]ny act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year . . . [or] any act which is indictable under any [federal criminal statute].

18 U.S.C. § 1961(A)-(B).

Under Arizona law, racketeering is defined as:

> [A]ny act, including any prepatory or completed offense, that is chargeable or indictable under the laws of the state or country . . . and that would be punishable by imprisonment for more than one year under the laws of this state . . . and the act involves either: (a) Terrorism . . . that results or is intended to result in a risk of serious physical injury or death. (b) Any of the following [criminal] acts if committed for financial gain.[7]

A.R.S. § 13-2301(D)(4). To be liable for racketeering under either federal or Arizona law, one must have committed a criminal offense. *See Sanford*, 625 F.3d at 557.

Plaintiff has not alleged that SBE's actions against him were criminal. Plaintiff only alleges that Defendants "engaged in a pattern of unlawful activity in order to obtain political, retaliatory, or retributive gains that have resulted in harm and injury to Plaintiff." (Doc. 36 at ¶154). The alleged unlawful activities include "baseless administrative decisions, malicious prosecutions, abuses of process, assertions of patently false claims, fraudulent schemes, and extortions." (*Id.* at ¶155). Only extortion is a punishable criminal offense from this list, and Plaintiff has not plead any facts to show that Defendants obtained financial gain by abusing their authority as board members. The other alleged actions might, if properly plead, be grounds for a civil tort suit, but they are not criminal actions punishable by imprisonment. Plaintiff has failed to state a claim under the federal racketeering statute that the Defendants were involved in a pattern of racketeering activity. Plaintiff has also failed to state a claim under the Arizona racketeering statute, because he has failed to allege that Defendants committed terrorism or criminal offenses for financial gain.

### 2. Count 12: Whistle-blowing

Count 12 is a claim for violating the rights of whistle-blowers against retaliation under 5 U.S.C. § 2302 and A.R.S. § 23-1501. Plaintiff lacks standing to bring these claims.

---

[7]Such acts include homicide, robbery, kidnapping, forgery, theft, bribery, gambling, usury, extortion, prohibited drug use, trafficking in weapons, false claims for arson, attempt to defraud, obscenity, sexual exploitation of a minor, prostitution, human smuggling, etc. A.R.S. § 13-2301(D)(4)(b)(i)-(xxx).

1                               **a.**       **5 U.S.C. § 2302**

Title 5 U.S.C. § 2302(b)(8)(A) prohibits federal personnel from retaliating against employees for disclosing violations of law by the employer. An "employee" is defined by 5 U.S.C. § 2105(a)(1)-(3) as an officer "appointed in the civil service," a person "engaged in the performance of a Federal function under authority of law or an Executive act," and persons subject to the supervision of "the President; [a Congressperson]; a member of a uniformed service; the head of a Government controlled corporation; or an adjutant general designated by the Secretary [of Defense]." Also, under A.R.S. § 23-1501(3)(c)(ii) "an employee has a claim against an employer for termination of employment" when "[t]he employer has terminated the employment relationship of an employee in retaliation for" an employee's disclosure of the employer's unconstitutional actions.

Plaintiff argues that "Defendants intentionally or recklessly violated protections and rights afforded to [him] for his whistle-blowing while an employee of the state in which a portion of his income was federal monies received by the state." (Doc. 32 at ¶202). Plaintiff refers to his whistle-blowing against NAU when he was an employee and graduate student at NAU. Plaintiff, however, is not and never was an employee of Defendant SBE or an employee of the individual Defendant board members of the SBE. (Doc. 36 at 13:6–10). Plaintiff alleges that the retaliation against his whistle-blowing was the denial of his teaching certificate. (Doc. 44 at 18:19–25, 19:1–12). Moreover, Plaintiff is not a federal employee under the federal statute because a federal employee must be appointed and engaged in federal functions. 5 U.S.C. § 2105(a). Receiving part of one's income through federal funding is therefore insufficient to afford one the status of being a federal employee. Plaintiff has no standing under the federal whistle-blower statute.

                              **b.**       **A.R.S. § 23-1501**

Under A.R.S. § 23-1501(3)(c)(ii) "an employee has a claim against an employer for termination of employment" when "[t]he employer has terminated the employment relationship of an employee in retaliation for" an employee's disclosure of the employer's unconstitutional actions. There is, however, no employment relationship between Defendants

1  SBE and board members and the Plaintiff. Moreover, Plaintiff does not allege that he was
2  terminated by the State or by Defendants.

3  Because there was no employment relationship and no termination, Plaintiff has failed
4  to state a claim under the state whistle-blowing statute.

### 3. Count 13: Americans with Disabilities Act

Count 13 is a claim of discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101. (Doc. 32 at ¶206–10). Plaintiff alleges that Defendants unfairly discriminated against him on the basis of his status as an alcoholic. (*Id.* at ¶88). There are several different titles of the ADA under which plaintiffs may bring a claim. Title I, which has broad applicability to workplace discrimination, and Title II, which applies to discrimination by public entities. Both seem relevant to Plaintiff's claim. 42 U.S.C. § 12111–17, 12131–34. Because Plaintiff does not specify his claim under the ADA, this Court evaluates his claim under both Title I and Title II.

To be liable under Title I of the ADA, a "covered entity" must have "discriminate[d] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. A "covered entity" is defined as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). Because "Title I of the ADA is governed by the procedures of Title VII of the Civil Rights Act of 1964 . . . Before bringing suit . . . the plaintiff must file a discrimination charge with the EEOC within 180 days of the alleged unlawful practice." *Madden-Tyler*, 189 Ariz. at 470.

Title II of the ADA prohibits public entities from discriminating against qualified individuals with disabilities by "exclud[ing] from participation in or . . . den[ying] the benefits of the services, programs, or activities" of that public entity. 42 U.S.C. § 12132. A public entity is defined as "any State or local government" or "any department, agency . . . or instrumentality of a State or States or local government." *Id.* § 12131. For purposes of statute of limitations, claims under Title II are treated like the personal injury claims of

§1983 and are thereby subject to Arizona's two year statute of limitations under A.R.S. § 12-542. *Madden-Tyler*, 189 Ariz. at 469.

Plaintiff has failed to bring a viable claim under either Title. With respect to Title I, Plaintiff has not alleged that he"file[d] a discrimination charge with the EEOC within 180 days of the alleged unlawful practice." *Madden-Tyler*, 189 Ariz. at 470. Even if Plaintiff had filed a discrimination claim with the EEOC and thereby obtained a right to sue letter, Defendants SBE and the board members are not covered entities under the ADA. *See* 42 U.S.C. § 12111(2) (defining a "covered entity" as "an employer, employment agency, labor organization, or joint labor-management committee"). The SBE is not Plaintiff's employer because it does not employ teachers, but rather authorizes teaching certifications. (Doc. 36 at 14:6–7). Nor is the SBE an employment agency, labor organization, or joint labor-management committee. Because Plaintiff has not alleged that there was either an existing employment relationship between SBE and Plaintiff or a prospective employment relationship, Plaintiff has failed to state a claim under Title I.

Under Title II, Defendant SBE qualifies as a public entity that is prohibited from discriminating in their programs and services against those with disabilities. In an analogous case, the Ninth Circuit has ruled that "medical licensing is an output of a public agency" and therefore medical licensing by a Medical Board is a service by a public entity. *Hason v. Medical Bd. of Cal.*, 279 F.3d 1167, 1172 (9th Cir. 2002). Regardless of whether a parallel argument can be made that the Arizona SBE's licensing services is like California Medical Board's licensing services, the statue of limitations has run. The two year statute of limitations accrued on May 18, 2008 and the facts that gave rise to Plaintiff's §1983 constitutional claims are the same facts that gave rise to the ADA Title II claim. Like the §1983 claims, Plaintiff filed the same ADA claim arising out of the first SBE hearing in the District Court of Oregon. (Doc. 20, Ex. 1). Plaintiff knew or should have known of his ADA claims arising out of both hearings by the second SBE hearing in May 2008.

### III.    Count 7: Abuse of Process

Count 7 is dismissed because of failure to state a claim under 12(b)(6).

### A. Legal Standard

The two "essential elements of the [abuse of process] tort include (1) a willful act in the use of judicial process (2) for an ulterior purpose not proper in the regular conduct of the proceeding." *Nienstedt v. Wetzel*, 133 Ariz. 348, 353, 651 P.2d 876, 881 (App. 1982). Arizona law defines "process" as "a citation, writ or summons issued in the course of judicial proceedings." A.R.S. § 1-215(32). An "ulterior purpose" requires showing that the process is "used primarily to accomplish a purpose for which the process was not designed." *Nienstedt*, 133 Ariz. at 354. There is, however, "no liability when the defendant has done nothing more than legitimately utilize the process for its authorized purposes, even though with bad intentions." *Id.* In other words, "when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant," the defendant is not liable. *Id.*

### B. Analysis

Plaintiff argues that Defendants used his criminal history of DUIs and phone harassment to terminate his substitute teaching license in Arizona. (Doc. 32 at ¶87). Plaintiff argues this is an abuse of process because Defendants knew of Plaintiff's criminal history in 2006 when he first submitted his application for reciprocity but Defendants waited to revoke the license until 2010 in retaliation for his suit against Defendants. (*Id.*; Doc. 44 at 14:9–15).

Under Arizona law, abuse of process means an abuse of *judicial* process. *See Nienstedt*, 133 Ariz. at 354. Plaintiff's allegations refer to the *administrative* process of revoking his substitute teaching license, a disciplinary proceeding controlled by the SBE. Defendant SBE is authorized under A.R.S. § 15-203(A)(27) to regulate reciprocity certification and regulate procedures for complaints of immoral conduct by certified teachers or impose disciplinary actions on teachers under §15-203(B). Plaintiff fails to meet the first element for an abuse of process claim under *Nienstedt* because there was no judicial process.

## IV. Counts 8-11: Negligence, Defamation, Emotional Distress

Counts 8–11 are brought for infliction of emotional distress, defamation/libel/false light invasion of privacy, negligence, and gross negligence. (Doc. 32 at ¶¶165–200).

Defendants assert that these claims are precluded. (Doc. 46 at 2:1–6). Because Plaintiff has already brought these same claims in Arizona state court, and the state superior court has already ruled in favor of Defendants on a motion for summary judgment, claim preclusion bars Plaintiff from bringing the same counts in federal court. (Doc. 20, Ex 2; Doc. 46, Ex. 1).

### A. Legal Standard

Claim preclusion bars subsequent litigations of the same claim. *Taylor v. Sturgell*, 553 U.S. 880, 892 (citing *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)). The Supreme Court has held that plaintiffs may not relitigate the same issues that have already been decided:

> A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.

*Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (internal citations omitted).

### B. Analysis

Counts 8–11 are identical to the counts brought in state court which are: defamation by libel, defamation by slander, intentional infliction of emotional distress, negligent infliction of emotional distress, and false light invasion of privacy. (Doc. 20, Ex. 2 at ¶¶52–72). These are the same claims based upon the same facts addressed in the Amended Complaint, filed in this Court. (Doc. 46 at 2:1–6). Plaintiff does not dispute that these are the same claims arising from the same facts, and previously stated that it washis intention to consolidate the two cases in federal court. (Doc. 44 at 4:15–17). The issues in state court were fully litigated because the claims were dismissed on the merits after a motion for summary judgment. (Doc. 46, Ex. 1). The Defendants need not wait for the final judgment on appeal to exercise their right to claim preclusion. *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988). Plaintiff's state tort claims are barred by *res judicata*.

## CONCLUSION

Counts 1–5 are dismissed based on statute of limitations, Counts 6–7 and 12–13 are

1 dismissed for failure to state a claim under Rule 12(b)(6), and Counts 8–11 are dismissed
2 based on claim preclusion. Because this Court has previously granted the Plaintiff's request
3 to amend his complaint, it need not do so again–especially when there is no indication that
4 any such attempt would or could be successful. *Flowers v. First Hawaiian Bank*, 295 F.3d
5 966, 978 (9th Cir. 2002).

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 36) is **GRANTED** and the Clerk of the Court is directed to terminate this action.

**IT IS FURTHER ORDERED** that the Clerk of the Court provide Judge Susan R. Bolton a copy of this ruling in light of case No. CV-11-1974-PHX-SRB.

DATED this 14th day of February, 2012.

*A. Murray Snow*
G. Murray Snow
United States District Judge